UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT SLAYTON,

      Plaintiff,

      v.

WELLS FARGO BANK, NA, *et al.*,

      Defendants.

Case No. 2:12-CV-00283
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

Plaintiff, Robert Slayton ("Slayton"), brings this diversity action alleging claims arising

out of state foreclosure proceedings. Plaintiff maintains that during the foreclosure action

Defendants Wells Fargo Bank, NA ("Wells Fargo") and Herman John Kennerty ("Kennerty")

engaged in fraudulent conduct through the filing of an affidavit. This matter is before the Court

on Wells Fargo's Motion to Dismiss the First Amended Complaint.[1] (ECF No. 14.) For the

reasons that follow, Wells Fargo's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

Slayton resides in Delaware County.[2] On July 24, 2006, Slayton executed a mortgage

---

[1] Wells Fargo also moved to dismiss Plaintiff's original Complaint. In light of Plaintiff's Amended Complaint, and Wells Fargo's subsequent Motion to Dismiss, the original Motion to Dismiss is **DENIED** as moot. (ECF No. 8.)

[2] The following facts are based on the allegations within Plaintiff's First Amended Complaint. The Court, however, has also considered the court filings from the underlying foreclosure action in the Delaware County Court of Common Pleas, *Deutsche Bank National Trust Company v. Slayton, et al.*, No. 08 CV E 09-1219. It is well settled that, in considering a motion to dismiss, "a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010); *see also Williams v. CitiMortgage, Inc.*, No. 2:08–cv–368, 2011 WL 1303257, at *4 (S.D. Ohio Mar. 31, 2011) ("[A] court need not feel constrained to

loan with respect to the property at issue. The promissory note and mortgage were originally in favor of First Franklin, a Division of City Bank of Indiana.

On September 10, 2008, Deutsche Bank National Trust Company ("Deutsche"), asserting that it was the holder of the note in question, filed a complaint seeking foreclosure and judgment against Slayton in the Delaware Court of Common Pleas.[3] Slayton answered the state-court complaint. In August 2010, Deutsche filed a motion for summary judgment in the foreclosure action. Slayton maintains that Wells Fargo caused the Affidavit of Herman John Kennerty ("Kennerty Affidavit") to be filed in support of the motion for summary judgment.[4] The Kennerty Affidavit specifically stated:

1.   Affiant's position is Vice President Loan Documentation of [Wells Fargo] as servicing agent for [Deutsche], as Trustee for FFMLT 2006-FF13. In such job position affiant has the custody of the accounts of said company, including the account of Robert P. Slayton . . . . Affiant states that the records of the accounts of said company are compiled at or near the time of occurrence of each event by persons with knowledge of said events, that said records are kept in the course if (sic) its regularly conducted business activity, and that it is the regular practice to keep such records related to the business activity.

2.   [Deutsche] is the holder of the note and mortgage which are the subject of the within foreclosure action. . . .

---

accept as truth conflicting pleadings that . . . are contradicted . . . by facts of which the court may take judicial notice.") (internal quotations omitted).

[3] Within the Amended Complaint, Plaintiff maintains that Wells Fargo filed the complaint and prosecuted the foreclosure action. The state court docket and filings, however, reflect that Deutsche filed the complaint, and later moved for summary judgment, in the foreclosure action. (*See* Mot. Dismiss Exs. E, F, ECF Nos. 14-5, 14-6.) Nevertheless, Wells Fargo concedes that it serviced the mortgage loan in question. (Mot. Dismiss 1–2, ECF No. 14.)

[4] As mentioned above, Kennerty is also a defendant in this action. The record reflects, however, that Plaintiff has not served Kennerty.

> 3.     A copy of the Assignment, which accounts for documented evidence that the Plaintiff is the holder of the note and mortgage which are subject of the within foreclosure action, is attached hereto . . . .
>
> 4.     Affiant states that there has been a default in payment under the terms of the aforesaid note and mortgage. The account is due for the April 1, 2008 payment and all subsequent payments. . . .

(Am. Compl. ¶ 14.)

Slayton maintains that Wells Fargo engages in the practice of using "robo-signers" in mortgage servicing in order to expedite foreclosures. According to Slayton, "[r]obo-signers are individuals whose sole job responsibility is to sign affidavits, assignments of mortgage and other legal documents used in foreclosures en masse so that homeowners can be removed from their homes by banks as quickly and cheaply as possible." (*Id.* at ¶ 16.) Slayton asserts that robo-signers do not read the documents necessary to assure the accuracy of the statements to which they swear. Moreover, Slayton contends that robo-signers sign documents outside the presence of a notary. In light of these practices, Slayton maintains that various statements within the Kennerty Affidavit are false. (*See id.* at ¶¶ 18, 20.)

On August 26, 2010, the state court granted Deutsche's motion for summary judgment and issued a decree in foreclosure. Slayton appealed this decision, but the Fifth District Court of Appeals ultimately dismissed the appeal in November 2010 for failure to prosecute. (Mot. Dismiss Ex. J, ECF No. 14-10.) On January 24, 2011, Slayton filed a motion for relief from judgment with the Delaware County Court of Common Pleas pursuant to Ohio Rule of Civil Procedure 60(B). In his reply brief, Slayton asserted that relief was proper under Rule 60(B)(5) because the Kennerty Affidavit was fraudulent. On December 20, 2011, after holding a hearing, the Magistrate issued a decision denying the motion for relief. (Mot. Dismiss Ex. K, ECF No.

3

14-11.) Despite noting that the issue was not properly raised, the Magistrate ultimately found that Slayton failed to submit sufficient evidence of fraud. (*Id.* at 7–8.) The Magistrate also held that denial of the motion was proper because Slayton failed to establish the timeliness of the motion and that a meritorious defense existed. (*Id.* at 12.) The Delaware County Court of Common Pleas adopted the Magistrate's decision. (Mot. Dismiss Ex. K, ECF No. 14-11.)

Slayton filed this action in April 2012. The Amended Complaint sets forth five counts all stemming from the allegedly fraudulent nature of the Kennerty Affidavit. Slayton specifically sets forth claims for declaratory judgment, injunctive relief, common law fraud, violation of the Ohio Consumer Sales Practice Act ("OCSPA"), and civil conspiracy. Wells Fargo moves to dismiss all of Slayton's claims.

## II. STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). " A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Slayton implies within briefing that the standards of *Twombly* are limited to complex litigation. (*See* Opp' Mot. Dismiss 3–4, ECF No. 20.) The United States Court of Appeals for the Sixth Circuit, however, has made clear that *Twombly* applies to all civil actions:

4

The Supreme Court has recently clarified that its decision in *Twombly* "expounded the pleading standard for 'all civil actions,'" despite the fact that *Twombly* itself arose in the context of an antitrust suit. *Ashcroft v. Iqbal*, —— U.S. ——, ——, 129 S.Ct. 1937, 1953 (2009). The Court's decision in *Iqbal* made clear that the *Twombly* standard is not limited to "sprawling, costly, and hugely time-consuming" litigation, *Twombly*, 550 U.S. at 560 n. 6, 127 S.Ct. 1955, dispelling such speculation by courts both within and outside this circuit. *See, e.g., U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 n. 6 (6th Cir. 2008); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 n. 1 (6th Cir. 2008); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 n. 4 (6th Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143, 155–58 (2d Cir. 2007), *rev'd, Iqbal*, 129 S.Ct. at 1954.

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 fn. 4 (6th Cir. 2009).

### III. ANALYSIS

Within his Amended Complaint, Slayton attempts to bring five claims. The Court will first consider Slayton's claims for declaratory judgment and injunctive relief. The Court will then address the remaining claims seperately.

**A.    Declaratory Judgment and Injunctive Relief**

Slayton's first count seeks declaratory judgment asking the Court to "declare the entire Foreclosure Action null and void . . . ." (Am. Compl. ¶ 30.) In seeking declaratory judgment, Slayton asserts that there are justiciable controversies concerning who was the holder of the note and mortgage in question and whether the Kennerty Affidavit was "executed in accordance with the law . . . ." (*Id.* at ¶ 28.)    Additionally, Slayton requests injunctive relief against eviction based on Defendants' alleged acts of fraud and deceit. (*Id.* at 50–51.) Wells Fargo maintains that these claims fail because (1) they are barred under the *Rooker-Feldman* doctrine, (2) the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits the relief Slayton seeks, and (3) the declaratory

5

judgment Slayton seeks is precluded in light of both issue and claim preclusion.[5]

### 1. *Rooker-Feldman* Doctrine

Before addressing Slayton's other arguments for dismissal, the Court must decide

whether it lacks jurisdiction in light of the *Rooker-Feldman* doctrine.  Pursuant to the

*Rooker–Feldman* doctrine federal courts lack subject matter jurisdiction over "cases brought by

state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those

judgment . . . ." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

In *Exxon Mobile*, the Supreme Court recognized that the lower court had overextended the

doctrine:

> Variously interpreted in the lower courts, the doctrine has sometimes been construed
> to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding
> Congress' conferral of federal-court jurisdiction concurrent with jurisdiction
> exercised by state courts, and superseding the ordinary application of preclusion law
> pursuant to 28 U.S.C. § 1738.

544 U.S. at 283.

Following *Exxon Mobile*, the pertinent inquiry is the source of the injury:

> We determine "whether *Rooker–Feldman* bars a claim by looking to the 'source of the
> injury the plaintiff alleges in the federal complaint.'" *Evans v. Cordray*, 424 Fed.
> Appx. 537, 538 (6th Cir. 2011) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393
> (6th Cir.2006)). *Rooker–Feldman* does not address potential conflicts between federal
> and state court orders.  That is the purview of the doctrines of comity, abstention, and
> preclusion.  Instead, *Rooker–Feldman* focuses on whether the state court decision
> caused the injury: "If the source of the injury is the state court decision, then the
> Rooker–Feldman doctrine would prevent the district court from asserting jurisdiction.
> If there is some other source of injury . . . then the plaintiff asserts an independent

---

[5] Because the Court finds that the Anti-Injunction Act prohibits Slayton's claims for both injunctive relief and declaratory judgment, it is unnecessary for the Court to reach the preclusive effect of the state court proceedings.

claim." *McCormick*, 451 F.3d at 393.

*Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012). To determine the source of the injury, it is often helpful to consider the relief the plaintiff requests. *See id.* The Sixth Circuit has held that "*Rooker-Feldman* does not bar a federal-court challenge to an individual's improper conduct during a prior state court proceeding." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007).

In this case, the *Rooker-Feldman* doctrine does not bar Slayton's claim for injunctive relief. Count V of the Amended Complaint seeks injunctive relief because of Defendants' acts of fraud and deceit. Slayton specifically asserts that Defendants committed fraud by submitting the Kennerty Affidavit. Accordingly, the source of the injury, as to this claim, "is the alleged fraud perpetrated upon the state court by the filing of a false affidavit, not the state court judgment itself." *Hammond v. Citibank, N.A.*, No. 2:10–CV–1071, 2011 WL 4484416, at \*4 (S.D. Ohio Sept. 27, 2011). The fact that Defendants actions took place during the state-court proceedings does not bring Slayton's claim within the contours of *Rooker-Feldman*.

Slayton's cause of action for declaratory judgment presents a closer question. The language of this claim indicates the state-court judgment itself caused at least some of the injuries of which Slayton complains. Specifically, Slayton seeks to challenge who was the holder of the note and mortgage and whether foreclosure was proper. Although not determinative, it is noteworthy that the relief Slayton seeks is a declaration that the entire Foreclosure Action is null and void. Ultimately, to the extent Slayton seeks declaratory judgment based on such grounds, he is seeking to directly challenge the state court judgment, and this Court lacks jurisdiction over such a claim.

7

Slayton's claim for declaratory judgment, however, also sets forth the Kennerty Affidavit as grounds for relief. To the extent it references the Affidavit, Plaintiff's declaratory judgment claim still appears to be challenging the state court's consideration of the Affidavit rather than Defendants' actions. At the same time, however, viewing the claim within the context of the entire Amended Complaint, it is clear that Slayton maintains that Defendants took fraudulent action in submitting the Affidavit.[6] Consequently, to the extent Slayton seeks declaratory judgment based on Defendants' allegedly fraudulent activity—as opposed to the state court's rulings—the Court has jurisdiction over this claim. Notably, this Court recently concluded that it had jurisdiction over a similar declaratory judgment claim. *See Hammond*, 2011 WL 4484416, at \*4 (holding that the Court had jurisdiction "to rule on the validity of the state court foreclosure action incident to its ruling on the fraudulent nature of the affidavit").

### 2. Anti-Injunction Act

Wells Fargo also maintains that the Anti-Injunction Act, specifically 28 U.S.C. § 2283, prohibits the injunctive relief Slayton seeks. Slayton fails to address the Anti-Injunction Act within his responsive briefing.

The Anti-Injunction Act provides in pertinent part that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The Supreme Court has held that 'proceedings' for the purposes of the Act include 'all steps taken or which may be taken in the state court or by its

---

[6] Although this may be a generous reading of Plaintiff's claim for declaratory judgment, for the reasons described below, the Court finds that the relief Plaintiff seeks is barred under the Anti-Injunction Act.

8

officers from the institution to the close of the final process.'" *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 941–42 (6th Cir. 2002) (quoting *Hill v. Martin*, 296 U.S. 393, 403 (1935)). Moreover, "'[i]t is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding.'" *Id.* (quoting *Atlantic Coast Line Ry. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)). The Sixth Circuit has further held that "where . . . declaratory relief would have the same practical effect as an injunction, the Anti-Injunction Act precludes the court from granting a declaratory judgment." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 303 (6th Cir. 2004).

Section 2283 contains three exceptions "permit[ting] injunctions against state court proceedings (1) where Congress expressly authorizes, (2) where necessary in aid of the court's jurisdiction, and (3) where necessary to protect or effectuate the court's judgments." *Id.* at 302. "The party pursuing the injunction bears the burden of establishing that the injunction falls within one of the exceptions." *Hohenstein v. MGC Mortg., Inc.*, No. 2:12–cv–46, 2012 WL 298123, at *9 (S.D. Ohio Feb. 1, 2012) (quoting *Kaplan v. Fitzgerald*, No. 1:11CV0945, 2011 WL 2039111, at *1 (N.D. Ohio May 24, 2011)). With regard to the first exception, as the language provides, the Court must consider whether Congress has "expressly authorized injunctions against state courts" within the area in question. *Martingale*, 361 F.3d at 302. "Courts have applied this second exception in only two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." *Id.* Finally, to demonstrate the third exception, there must be a prior federal court decision concerning the matter. *Id.* at 303.

In this case, the Court finds that the Anti-Injunction Act prohibits the injunctive relief

Slayton seeks.[7]  Within his claim for injunctive relief Slayton seeks to enjoin his eviction.

Considering both Slayton's Amended Complaint and briefing, however, none of the three Anti-

Injunction Act exceptions apply to this case.  First, Slayton fails to assert, nor does the Court

find, that Congress expressly authorized injunctions against state court foreclosure actions, at

least based on any of the grounds Slayton raises in his Amended Complaint.  Second, neither of

the two scenarios associated with the second exception apply.  Finally, as there is no prior federal

court decision concerning the foreclosure action, the third exception does not apply.  Tellingly,

this Court held within a similar factual context that "[t]he Anti-Injunction Act has been

interpreted to preclude a federal court from prohibiting judicial executions to enforce collection

of a state court judgment, such as the Foreclosure Action at issue here."[8]  *Wellman v. Nat'l City

Mortg. Co.*, No. 2:08-cv-531, 2008 WL 2329228, at *2 (S.D. Ohio June 4, 2008).

Furthermore, the Court finds that, under the circumstances of this case, the Anti-

Injunction Act prohibits Slayton's claim for declaratory judgment.[9]  As mentioned above, Slayton

---

[7]  "The Anti–Injunction Act is not jurisdictional; rather, it restricts a district court's remedial authority."  *Tr. of Carpenters' Health & Welfare Trust Fund of St. Louis v. Darr*, 694 F.3d 803, 807 n.2 (7th Cir. 2012).  Here, as explained further below, the Anti-Injunction Act bars both injunctive relief and declaratory judgment.  Accordingly, the Court finds that Slayton fails to state independent, facially plausible, claims on there grounds.

[8]  The Court also notes, to the extent Slayton attempts to state an independent claim for injunction, "that an injunction is a remedy, not a cause of action."  *Hammond*, 2011 WL 4484416, at *11.

[9]  The Court recognizes that Wells Fargo only explicitly raises the Anti-Injunction Act as prohibiting Slayton's claim for injunctive relief.  Nevertheless, in light of Sixth Circuit authority considering declaratory judgments that have the same practical effect, the Court finds that it naturally follows that the Anti-Injunction Act is equally applicable to Slayton's claim for declaratory judgment.  Once again, within his responsive briefing, Slayton fails to address the Anti-Injunction Act in any manner.

seeks a declaration that the state court foreclosure action is null and void.  The goal of such relief is the same as an injunction, to halt the foreclosure proceedings.  *See Martingale*, 361 F.3d at 303.  Consequently, because the declaratory judgment Slayton seeks would have the same practical effect as an injunction, the Anti-Injunction Act precludes the Court from granting a declaratory judgment.  *Id.*

**B.    Fraud**

Slayton also brings a claim for common law fraud.  Wells Fargo maintains that this claim fails for several reasons including that (1) Ohio's doctrine of witness immunity bars the claim and (2) Slayton fails to sufficiently plead reliance.

**1.    Witness Immunity**

Under Ohio law, "there is a very well established rule that no action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn perjury . . . regardless of whether the perjurer was a party to, or a witness in, the action or proceedings."  *Anderson v. Smith*, 196 Ohio App. 3d 540, 545 (Ohio Ct. App. 2011) (internal quotations omitted).  Witness immunity is based on the policy rationale that "freedom of speech is essential in a judicial proceeding to ensure justice."  *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 51 (Ohio Ct. App. 2009) (internal quotation omitted).  Applying this doctrine, "allegedly false or fraudulent statements made via affidavits and trial testimony by attorneys, parties, or witnesses in a civil lawsuit failed to state a claim for falsification to recover damages, because parties are immune from civil suits for remarks made in connection with a civil action."  *Hershey v. Edelman*, 187 Ohio App.3d 400, 409 (Ohio Ct. App. 2010).

In this case, the doctrine of witness immunity bars Slayton's common law fraud claim.

11

Slayton asserts fraud based on the filing of an allegedly false affidavit during the state court foreclosure proceedings. This is exactly the type of conduct that the witness immunity doctrine entails. Moreover, the fact that it was Kennerty, as opposed to Wells Fargo, who actually testified does not save Slayton's cause of action against Wells Fargo.[10] The doctrine of witness immunity applies equally to those who allegedly suborn false testimony. *See, e.g.*, *Anderson*, 196 Ohio App. 3d at 545 ("[Appellant could not have filed a civil claim seeking to recover damages for suborning perjury . . . ."); *Whelan v. Vanderwist of Cincinnati*, No. 2010–G–2999, 2011 WL 6938600, at *5 (Ohio Ct. App. Dec. 30, 2011) (holding that an insurance company could not be civilly liable for encouraging a witness to give allegedly false deposition testimony). This Court recently applied Ohio's witness immunity to a common law fraud claim involving highly similar "robo-signer" allegations. *Dooper v. Wells Fargo Bank, N.A. et al.*, No. 2:10-cv-1102, slip op. at 14 (S.D. Ohio Jan. 13, 2012) (attached as Opp'n Mot. Dismiss Ex. B, ECF No. 20-2).

The Court notes that, even in light of the witness immunity doctrine, a victim of fraudulent testimony still has avenues of recourse. A victim of such conduct is simply unable to bring an independent civil action based on such conduct. Notably, in this case, Slayton was able to raise the issue before the Delaware County Court of Common Pleas pursuant to a Rule 60(B) motion for relief from judgment. The Court considered and rejected Slayton's argument, finding insufficient evidence of fraud.

---

[10] Within briefing, Slayton briefly asserts that Wells Fargo lacks standing to raise a witness immunity defense.

## 2. Reliance

Even assuming that the witness immunity doctrine is inapplicable to Slayton's fraud

claim, he still fails to state a claim.  Under Ohio law, to plead fraud a plaintiff must allege:

> (1) a representation or, where there is a duty to disclose, omission of a fact, (2) which
> is material to the transaction at hand, (3) made falsely, with knowledge of its falsity,
> or with such utter disregard and recklessness as to whether it is true or false that
> knowledge may be inferred, (4) with the intent of misleading another into relying
> upon it, (5) justifiable reliance upon the representation or concealment, and (6) a
> resulting injury proximately caused by the reliance.

*Morgan Stanley Credit Corp. v. Fillinger*, 979 N.E.2d 362, 368 (Ohio Ct. App. 2012).

Importantly, "[i]t is clear that [a] plaintiff fails to state a valid cause of action for fraud when he

alleges that a third-party relied on misrepresentations made by a defendant and that he suffered

injury from that third-party's reliance." *Lisboa v. Tramer*, No. 97526, 2012 WL 1142920, at *6

(Ohio App. Ct. Apr. 5, 2012) (internal quotations omitted).  As this Court provided in *Hammond*:

> A plaintiff may only bring a fraud claim where the defendant made the
> representations to induce the plaintiff, not a third party, to act upon them. *Wells v.
> Cook*, 16 Ohio St. 67 (Ohio 1865) (syllabus) . . . .  In the case sub judice, the Plaintiff
> has alleged only that the Defendants submitted a fraudulent affidavit on the state
> court.  There is no allegation that the statements that [the affiant] had personal
> knowledge of the Plaintiff's case in any way induced or were intended to induce the
> Plaintiff, not the court, to act.

2011 WL 4484416, at *9.

Here, Slayton fails to plead sufficient facts to demonstrate that he relied, and that Wells

Fargo intended to induce him to rely, on the allegedly false Kennerty Affidavit.  Rather, as was

the case with the plaintiff in *Hammond*, Slayton alleges that Wells Fargo submitted a fraudulent

affidavit to the state court.  Accordingly, Slayton fails to state a viable claim for fraud under Ohio

law.

13

C.    **Ohio Consumer Sales Practice Act**

Plaintiff also brings claims against Wells Fargo under various sections of the OCSPA. The OCSPA prohibits "suppliers" from engaging in deceptive practices during consumer transactions.  Ohio Rev. Code § 1345.02(A).  The parties dispute whether Ohio's doctrine of witness immunity, described above, applies to claims under OCSPA.[11]

There is limited case law relating to whether the OCSPA abrogates Ohio's common law doctrine of witness immunity.  This Court has held on multiple occasions that—at least under certain circumstances—immunity doctrines are inapplicable to claims under the Fair Dept Collection Practices Act ("FDCPA"), an analogous federal law.[12]  *See, e.g.*, *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 949–51 (S.D. Ohio 2005) (holding that various immunity doctrines, including witness immunity, did not bar FDCPA claims); *Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662, 666 (S.D. Ohio 2004) (concluding that the witness immunity doctrine did not apply to the FDCPA claims at issue); *Hartman v. Asset Acceptance Corp.*, 467 F. Supp. 2d 769, 776 (S.D. Ohio 2004) (same); *Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F. Supp. 2d 903, 913 (S.D. Ohio 2004) (holding that the "rationales behind the common law

---

[11]  Wells Fargo further maintains that as a national bank it is a financial institution and not subject to the OCSPA.  Under the OCSPA, consumer transactions does not include transactions between financial institutions and their customers.  Ohio Rev. Code § 1345.01(A).  There is some question as to whether the OCSPA applies to a financial institution operating as a mortgage loan servicer.  *JP Morgan Chase Bank, N.A. v. Horvath*, 862 F. Supp. 2d 744, 750 (denying dismissal of a OCSPA claim to a financial institution acting as a mortgage loan servicer); *Hammond*, 2011 WL 4484416, at *8 n.9 (implying that a financial institution is not liable under the OCSPA even when it operates as a mortgage loan servicer).  Because the Court finds that immunity bars Slayton's OCSPA claim, it is unnecessary to reach this issue.

[12]  "The interrelationship between the FDCPA and OCSPA is well established." *Jarvis v. First Resolution Mgt. Corp.*, No. 26042, 2012 WL 6042693, at *3 (Ohio Ct. App. Dec. 5, 2012).

14

witness immunity doctrine" did not support immunity within the context of the FDCPA).

Moreover, the *Delawder*, *Blevins*, and *Hartman* decisions similarly held that the absolute

litigation privilege did not apply to OCSPA claims. *See, e.g.*, *Delawder*, 443 F. Supp.2d 942,

954 ("[T]his Court agrees with its sister court that it does not appear that the Ohio courts would

apply Ohio's absolute litigation privilege to claims brought under the OCSPA.") (internal

quotations omitted). Notably, these cases all involved affidavits filed in conjunction with the

initial complaint. *See, e.g.*, *id.* at 944.

The Sixth Circuit has since addressed witness immunity within the context of the

FDCPA. *See generally*, *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir.

2006). In *Todd*, the Sixth Circuit held "nothing in the FDCPA itself or the legislative history of

the Act" provided that Congress intended to abrogate the doctrine of witness immunity. *Id.* at

439. Moreover, the Sixth Circuit recognized "that testimony presented in the form of an affidavit

may be protected under absolute witness immunity." *Id.* Applying common law immunity

principles, however, the Court held that a complaining witness—who submitted an affidavit to

initiate garnishment proceedings—was not entitled to witness immunity. *Id.* at 444–47; *see also*

*Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 27 (6th Cir. 2007) (holding that

witness immunity did not apply to a complaining witness affidavit attached to a state-court

complaint within the context of the FDCPA). The Sixth Circuit has emphasized that a

complaining witness is one who "set[s] the wheels of government in motion by instigating a legal

action." *Todd*, 434 F.3d at 444 (internal quotations omitted). The timing of the testimony in

question is also important, because even a complaining witness cannot be held liable for

perjurious trial or grand jury testimony. *Rehberg v. Paulk*, 132 S.Ct. 1497, 1507 (2012).

15

Finally, Ohio courts have addressed similar situations concerning abrogation of common law doctrines. In 2009, the Ohio Supreme Court held that the OCSPA did not abrogate the parol evidence rule. *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St. 3d 546, 551 (Ohio 2009). The Court reasons that "the general assembly will not be presumed to have intended to abrogate a settled rule of the common law unless the language used in a statute clearly supports such intention." *Id.* (internal quotations omitted). Because the plain and express language of the OCSPA did not indicate an intent to limit the parol evidence rule, the rule applied. *Id.* Additionally, at least one Ohio court has held that a statutory cause of action allowing civil liability for falsification, Ohio Revised Code § 2921.13, did not render witness immunity inapplicable. *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App. 3d 40, 52–53 (Ohio Ct. App. 2009). At the same time, however, some Ohio courts have also recognized that the OCSPA applies to litigation activities. *See, e.g., Gatto v. Frank Nero Auto Lease, Inc.*, No. 74894, 1999 WL 195664, at *4–5 (Ohio Ct. App. Apr. 8, 1999) (applying OCSPA to efforts to obtain, and collect on, default judgment).

In light of the above authority, and under the circumstances of this case, Ohio's doctrine of witness immunity bars Slaytons' OCSPA claim. Slayton does not highlight, and the Court does not find, anything within language of OCSPA that signifies an intent to abrogate witness immunity. Accordingly, the Court finds that Ohio's doctrine of witness immunity applies to OCSPA claims. As described above, the Sixth Circuit has reached a similar conclusion, applying common law immunity to the FDCPA. *Todd*, 434 F.3d at 439. Moreover, for the reasons described above, Ohio law witness immunity is applicable to the Kennerty Affidavit and any claims involving the suborning of false testimony. Finally, even applying a complaining witness

16

rationale to this case, witness immunity would still apply in this case. The Kennerty Affidavit was not submitted during the instigation of the foreclosure action. Rather, the Affidavit was factual evidence in favor of a dispositive motion, which Deutsche filed after Slayton had answered the complaint. Under such circumstances, the Affidavit is akin to trial testimony.

**D.     Civil Conspiracy**

Finally, Wells Fargo moves for dismissal as to Slayton's civil conspiracy claim. Wells Fargo specifically claims that Slayton fails to sufficiently plead an unlawful act. In opposing Wells Fargo's Motion to Dismiss, Slayton fails to explicitly address the civil conspiracy claim.

In this case, the Court agrees that Slayton's Ohio civil conspiracy claim fails as a matter of law. "The tort of civil conspiracy is a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998) (internal quotations omitted). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Id.* Here, in light of the doctrine of witness immunity, the Kennerty Affidavit cannot form the basis for Slayton's civil conspiracy claim. *See Hammond*, 2011 WL 4484416, at *10 (" Ohio does not recognize the tort of civil conspiracy based on subornation of perjury."); *Dooper*, No. 2:10-cv-1102, slip op. at 13 (dismissing civil conspiracy claim in light of doctrine of witness immunity); *cf. also Costell v. Toledo Hosp.*, 38 Ohio St. 3d 221, 223–24 (Ohio 1988) ("As to the case before us, appellants have essentially set forth allegations constituting perjury, subornation of perjury, and conspiracy to commit perjury, all of which are punishable under the criminal statutes but which, for public policy reasons, may not be the basis of a civil lawsuit."). Accordingly, Slayton fails to state a viable claim on this grounds.

## IV.  CONCLUSION

For the foregoing reasons, Wells Fargo's Motion to Dismiss the Amended Complaint is

**GRANTED**.  (ECF No. 14.)  Wells Fargo's original Motion to Dismiss is **DENIED** as moot.

(ECF No. 8.)  The clerk is **DIRECTED** to remove Wells Fargo as an active Defendant in this

action.

Finally, the record reflects that Defendant Herman John Kennerty has not been properly

served as of the date of this Opinion and Order.  Plaintiff is **DIRECTED TO SHOW CAUSE**

within **FOURTEEN (14) DAYS** why Defendant Kennerty should not be dismissed without

prejudice for want of service pursuant to Federal Rule of Civil Procedure 4(m).

**IT IS SO ORDERED.**

3-5-2013
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

18